Eddy Jean PHILIPPEAUX, Plaintiff,

v.

The COUNTY OF NASSAU and The
Nassau County Civil Service
Commission, Defendants.

No. 93–CV–1279 (JS).

United States District Court,
E.D. New York.

April 10, 1996.

Eddy Jean Philippeaux, Uniondale, NY, pro se.

Jack Olchin, Special Counsel, Nassau County Attorney's Office, Mineola, NY, Alan M. Parente, Nassau County Civil Service Commission, Mineola, NY, for defendants.

### MEMORANDUM AND ORDER

SEYBERT, District Judge:

In the instant action, plaintiff Eddy Jean Philippeaux, proceeding *pro se,* brings suit against defendants Nassau County and the Nassau County Civil Service Commission asserting causes of action under 42 U.S.C. §§ 1981, 1983 and 1985, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and also under New York law. The plaintiff alleges, *inter alia,* that the defendants wrongfully rejected his applications for employment with the Nassau County Civil Service Commission because of his race and national origin. He further alleges that the defendants, as part of a conspiracy to deny him employment, falsified his test results and failed to credit him for the training he received in the military. With respect to these employment discrimination claims, the plaintiff alleges that the defendants have pretextually asserted that he lacked the requisite resident status to be eligible for a civil service position.

In addition to his employment discrimination claims, the plaintiff also alleges that the defendants violated his procedural due process rights under the Fourteenth Amendment by failing to afford him a hearing to

establish his residency before disqualifying him on this basis. He also asserts pendent claims under sections 50(4) and 85 of the New York Civil Service Law.

Pending before the Court are three separate motions. First, the defendants move for summary judgment dismissing plaintiff's employment discrimination claims. Second, the plaintiff cross-moves for summary judgment in his favor. Finally, the plaintiff moves for a preliminary injunction enjoining the defendants from filling a civil service position that was the subject of the parties' settlement negotiations with another candidate during the pendency of this action, or alternatively, to have himself placed in said position in the interim. The plaintiff has not requested a hearing in support of his application for a preliminary injunction, and instead relies upon the documentary evidence that he has submitted. *See* Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment and Preliminary Injunction ¶ 16 (Docket # 107). In addition, neither of the defendants have requested a hearing to present evidence in opposition to the plaintiff's application for preliminary injunctive relief.

### *FACTUAL BACKGROUND*

Plaintiff is a black male of Haitian descent who is a citizen of the United States, having served in the armed forces during the Vietnam War. *See* Am.Compl. ¶¶ 2–3. During 1991, plaintiff, who has a high school education, applied for several positions of employment with the Nassau County Civil Service Commission, located in Mineola, New York. *See id.* ¶ 4. Specifically, plaintiff applied for the following six positions: (1) Veterans' Counselor II (Examination 60–008); (2) Mosquito Control Inspector Trainee (Examination 67–654); (3) Storekeeper I (Examination 65–247); (4) Automotive Parts Storekeeper (Examination 65–935); (5) Automotive Parts Storekeeper, Supervisor (Examination 68–853); and (6) Assistant to Medical Supply Supervisor (Examination 63–057). *See id.* ¶¶ 6–10; Defs.' Statement of Material Facts ¶¶ 12–14, 18. As part of the application process, plaintiff was required to take qualifying examinations for each of the positions that he applied for.

Plaintiff did not take Examination 60–008 for the position of Veterans' Counselor II. According to the plaintiff, he did not sit for this examination because the defendant Nassau County Civil Service Commission refused to process his application to take this test. *See* Am.Compl. ¶ 29. The defendants, in turn, contend that he was not permitted to sit for this examination because he did not meet the minimum requirements for this position of possessing a bachelor's degree and the necessary experience. *See* Defs.' Statement of Material Facts ¶ 12.

In addition, plaintiff did not show up to take Examination 67–654 for the position of Mosquito Control Inspector Trainee. *See id.* ¶ 13.

Plaintiff took the civil service examinations for each of the remaining four positions. Plaintiff subsequently was informed that he had failed to achieve a passing score of 70 on each of the examinations other than that for the position of Assistant to Medical Supply Supervisor (Examination 63–057). *See id.* ¶¶ 14, 18. According to the plaintiff, his receipt of failing scores on the examinations in question was attributable to the defendants' intentionally incorrect scoring of these examinations because of his race and ancestry, *see* Am.Compl. ¶ 18, and their failure to adjust his score upwardly, for the same discriminatory reasons, to take into account his eleven years of experience in the armed forces. *See id.* ¶ 19. According to the plaintiff, such upward adjustment to reflect his status as a veteran with relevant experience is required pursuant to section 85 of the New York Civil Service Law. *See id.* ¶ 20.

The plaintiff did, however, receive a passing score on Examination 63–057 for the position of Assistant to Medical Supply Supervisor. *See* Defs.' Statement of Material Facts ¶ 18. The plaintiff asserts that he was discriminatorily disqualified for this position on the pretext that he failed to meet the relevant residency requirements. *See* Am.Compl. ¶¶ 11, 23. According to the plaintiff, such discrimination can be inferred through the underrepresentation of minorities in Nassau County Civil Service jobs. *See id.* ¶ 24.

Following his receipt of a passing score on the examination for the position of Assistant to Medical Supply Supervisor, the Nassau County Civil Service Commission commenced an investigation of the plaintiff to determine whether he had been a "resident" of Nassau County for the period commencing one year before he sat for that examination. *See id.* ¶ 12. This residency issue arose because, pursuant to section 23 4–a of the New York Civil Service Law, the Nassau County Civil Service Commission adopted residency restrictions, set forth in its examination announcements, requiring that all civil service applicants be residents of Nassau County for at least one year prior to the date of examination and maintain said residency through the date of appointment. *See* N.Y.Civ.Serv. Law § 23 4–a (McKinney 1983);[1] Defs.' Notice of Motion, Ex. M, N; Defs.' Statement of Material Facts ¶ 16. Further, section 50(4) of the New York Civil Service Law provides the following procedural safeguards attending the disqualification of an applicant for a civil service position based upon the applicant's failure to meet an established requirement for the position:

No person shall be disqualified [for failure to meet any of the established requirements for admission to the examination or for appointment to the position for which he applies] unless he has been given a written statement of the reasons therefor and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification.

N.Y.Civ.Serv.Law § 50(4) (McKinney 1983 & Supp.1996); *see id.* § 50(4)(a) (McKinney 1983).

The plaintiff contends that since 1989, he has been a resident of Nassau County, residing at his sister's home at 220 Anchor Way, Uniondale, New York. The Nassau County Civil Service Commission initially disagreed with this conclusion and disqualified the plaintiff, in 1991, from eligibility for this position. Upon a subsequent investigation conducted in March 1995, the defendants changed their position and now concede that plaintiff has been a resident of Nassau County since 1989. *See* Defs.' Statement of Material Facts ¶ 20; Defs.' Notice of Motion, Ex. Q ¶ 4.

On April 4, 1995, an eligible list for Examination 63–057, with respect to the position of Assistant to Medical Supply Supervisor, was established and plaintiff's name appeared third on the list. *See* Defs.' Statement of Material Facts ¶ 21; Pl.'s Notice of Motion, Ex. J. This list contained four names. *See* Pl.'s Notice of Motion, Ex. J. Pursuant to section 61(1) of the New York Civil Service Law, the appointing authority has the discretion of selecting "one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment...." N.Y.Civ.Serv.Law § 61(1) (McKinney 1983).

On April 19, 1995, this list was forwarded to the appropriate appointing authority, in this case, the Nassau County Medical Center, and on April 24, 1995, a letter was sent to the plaintiff to determine whether he was willing to interview for the position. *See* Defs.' Statement of Material Facts ¶¶ 22–23.

On May 9, 1995, plaintiff interviewed for the position of Assistant to Medical Supply Supervisor. *See id.* ¶ 24. Plaintiff, however, was not offered this position. Instead, this position was offered to Philip Hytower, whose name appeared fourth on the list. *See* Pl.'s Notice of Motion, Ex. J; Olchin Aff., Mem. from David C. Pappalardo, Director of Human Resources, to Jack Olchin, Esq., dated June 16, 1995 (Docket # 104).

### PLAINTIFF'S THEORIES OF THE CASE

The plaintiff asserts two principal theories of the case. First, he contends that the defendants violated his procedural due process rights because he was not afforded an

---

1. Entitled "[r]esidence restrictions for local positions," section 234–a of the New York Civil Service Law provides in pertinent part:

The state civil service department or municipal commission having jurisdiction over positions in a city or civil division may require that candidates for examination for appointment to any such positions be residents of ... the county ... in which such city or civil division is located....

N.Y.Civ.Serv.Law § 234–a (McKinney 1983).

opportunity to present all relevant facts concerning his asserted residency status to the Nassau County Civil Service Commission. *See* Am.Compl. ¶ 14. In this regard, plaintiff contends that the procedural safeguards set forth in section 50(4) of the New York Civil Service Law conferred upon him a liberty interest in receiving, prior to his disqualification for a civil service position as a result of his residency, a written statement of the reasons therefor and an opportunity to make an explanation and to submit facts in opposition to such disqualification. *See* N.Y.Civ. Serv.Law § 50(4). According to the plaintiff, the defendants' failure to afford him an evidentiary hearing constituted a deprivation of this liberty interest without due process of law.

Second, plaintiff alleges that the defendants intentionally discriminated against him because of his race and national origin in failing to certify his eligibility for the civil service positions for which he applied. According to the plaintiff, the defendants' acts of discrimination manifested themselves in their intentional misscoring of his examinations, their failure to process his application for the position of Veterans' Counselor II, and their pretextual invocation of the Nassau County residency requirement as the basis to disqualify him for the position of Assistant to Medical Supply Supervisor. In support of his contention that the defendants' conduct gives rise to an inference of discrimination, the plaintiff asserts that minorities are underrepresented in Nassau County Civil Service jobs, *see* Am.Compl. ¶ 24, and further alleges that the positions for which he was rejected were subsequently granted to white applicants who were less qualified than him. *See id.* ¶ 28.

## DISCUSSION

### I. Standard Governing Motion for Summary Judgment

 Under the law of the Second Circuit, a district court must weigh the following considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. . . . Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue-resolution.

*Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal case citations omitted). In evaluating the above considerations, a court must be mindful of whether the purported factual dispute is material, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. Defendants' Motion for Summary Judgment

The defendants move for summary judgment on the grounds that: (1) the plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended [Title VII], are time-barred, and (2) the plaintiff fails to establish a prima facie case of discrimination, because he either was not qualified for the positions for which he applied, or was never rejected

for such positions. The Court observes that the defendants' application is properly regarded as seeking partial summary judgment, as the defendants do not set forth any contentions concerning the viability of the plaintiff's procedural due process claim under 42 U.S.C. § 1983, his conspiracy claim under 42 U.S.C. § 1985(3), and his pendent claims under the New York Civil Service Law.

### A. *Alleged Failure to Bring Suit within Prescribed Time Period*

The defendants contend that the plaintiff's Title VII claims are barred because this action was not commenced within the applicable ninety-day period running from receipt of the right-to-sue letter. Specifically, the defendants assert that, as a matter of law, the plaintiff constructively received his right-to-sue letter on November 8, 1992, and that the plaintiff's failure to commence this action within 90 days thereof renders his Title VII claims untimely. The plaintiff, in turn, contends that he promptly commenced this action within the statutorily prescribed period by filing a complaint seeking *in forma pauperis* relief, on February 1, 1993, with the *Pro Se* Office of the United States District Court for the Southern District of New York.[2]

#### 1. *Facts*

A review of the record shows that on August 22, 1991, plaintiff instituted a charge of discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, against the Nassau County Civil Service Commission. Plaintiff filed this charge with the Equal Employment Opportunity Commission [EEOC], and the New York State Division of Human Rights, claiming discrimination on the basis of race and national origin. *See* Defs.' Statement of Material Facts ¶¶ 1–2.

On October 30, 1992, the EEOC issued a determination dismissing plaintiff's charge. *See id.* ¶¶ 3–4; Defs.' Notice of Motion, Ex. B. This right-to-sue letter was mailed by certified mail on October 30, 1992 to plaintiff's address at 220 Anchor Way, Uniondale,

New York 11553. This letter was returned to the EEOC, on November 20, 1992, as unclaimed. *See* Defs.' Statement of Material Facts ¶ 4.

On January 22, 1993, plaintiff called the EEOC regarding the status of his claim. Over the telephone, plaintiff was notified of the dismissal of his charge of discrimination. The right-to-sue letter was then reissued and mailed, on January 26, 1993, to plaintiff's mailing address of P.O. Box 2994, New York, NY 10185. *See id.* The plaintiff asserts that he received the right-to-sue letter on January 27, 1993. *See* Am.Compl. ¶ 26.

On February 1, 1993, the plaintiff submitted a *pro se* complaint, seeking *in forma pauperis* relief, to the *Pro Se* Office of the United States District Court for the Southern District of New York. *See* Defs.' Notice of Motion, Ex. C, at 1. The Nassau County Civil Service Commission was the sole defendant named in this initial complaint. *See id.* This complaint, however, was not filed in the Southern District until March 12, 1993. *See* Defs.' Statement of Material Facts ¶ 5; Defs.' Notice of Motion, Ex. C, at 1.

By Order dated March 12, 1993, this case was transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1406(a). *See* Pl.'s Notice of Motion, Ex. A. On March 30, 1993, defendant Nassau County Civil Service Commission received a copy of the complaint by mail.[3] *See* Defs.' Statement of Material Facts ¶ 7.

#### 2. *Legal Analysis*

■ It is well established that a plaintiff generally must file a lawsuit under Title VII in federal district court within 90 days after receipt of a "right-to-sue letter" from the EEOC. Failure to file suit within the statutory mandated period is cause for dismissal. *See* 42 U.S.C. § 2000e–5(f)(1).

The defendants do not dispute the plaintiffs' contention that he did not actually receive the right-to-sue letter until January 27, 1993, and that if that date is employed for

---

**2.** By Order dated March 12, 1993, this case was transferred to the Eastern District of New York pursuant to 28 U.S.C. § 1406(a).

**3.** On April 28, 1994, plaintiff amended his complaint and named Nassau County as an additional defendant. *See* Defs.' Statement of Material Facts ¶ 9; Defs.' Notice of Motion, Ex. F.

determining the commencement of the 90–day period, then the plaintiff's Title VII claims would be timely. The defendants assert, however, that the date of *constructive* receipt in this case should be November 8, 1992. According to the defendants, this date should be employed because it is seven business days after the EEOC's issuance of its right-to-sue letter on October 30, 1992. The defendants further argue that the doctrine of constructive receipt should apply because it was the plaintiff's own lack of diligence, in failing to notify the EEOC of his change of address, that caused the right-to-sue letter to be returned to the EEOC as unclaimed mail. In support of their contention, the defendants direct the Court to 29 C.F.R. § 1601.7(b), which imposes upon the person aggrieved "the responsibility to provide the [EEOC] with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the [EEOC's] consideration of the charge." 29 C.F.R. § 1601.7(b) (1995). Accordingly, the defendants assert that the plaintiff's failure to commence this action by February 10, 1993 warrants the dismissal of his Title VII claims. *See Hunter v. Stephenson Roofing, Inc.,* 790 F.2d 472, 475 (6th Cir.1986) (90–day filing period commences 5 days after date EEOC mailed right-to-sue letter to address of record); *St. Louis v. Alverno College,* 744 F.2d 1314, 1317 (7th Cir.1984) (90–day limit for filing employment discrimination suit begins on date that right-to-sue letter was delivered to the most recent address plaintiff had provided the EEOC); *Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1243 (11th Cir.1982) (per curiam) (plaintiff bears burden of advising EEOC of address changes or to take other reasonable steps to ensure delivery of the notice to his current address); *Roush v. Kartridge Pak Co.,* 838 F.Supp. 1328, 1335 (S.D.Iowa 1993) (employing presumption that right-to-sue letter was received by plaintiff 7 days after being mailed by the EEOC); *compare Hernandez v. Hill Country Tel. Coop., Inc.,* 849 F.2d 139, 141–42 (5th Cir.1988) (under Fifth Circuit law, when the right-to-sue letter is addressed to the claimant, the 90–day period begins to run when the claimant, and not his attorney, receives such letter); *see also Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990) (equitable tolling does not apply to garden variety claims of excusable neglect).

■ It is unnecessary, however, for this Court to decide whether the doctrine of constructive *receipt* should apply in this case because, under the law of the Second Circuit, the plaintiff constructively *filed* this lawsuit prior to February 10, 1993. A review of the initial *pro se* complaint that plaintiff filed in the Southern District of New York shows that it was stamped as received by the Southern District's *Pro Se* Office on February 1, 1993. *See* Defs.' Notice of Motion, Ex. C, at 1. The Second Circuit Court of Appeals has held that, where the plaintiff seeks approval. to proceed *in forma pauperis,* the date of submission of a complaint to the *Pro Se* Office shall be regarded as the date of filing for purposes of the statute of limitations. *See Toliver v. Sullivan County,* 841 F.2d 41, 42 (2d Cir.1988) (per curiam) ("[W]here in forma pauperis relief is granted, the action should be treated as timely, provided the complaint was received by the clerk's office prior to the expiration of the limitations period."). It is undisputed that the plaintiff was granted *in forma pauperis* relief in this case. Accordingly, even under the defendants' proposed analysis, the plaintiff's complaint was timely.

## B. *Prima Facie Case of Employment Discrimination*

■ The defendants also seek summary judgment dismissing the plaintiff's employment discrimination claims for failure to establish a prima facie case. Although the defendants specifically refer only to plaintiff's Title VII claims as the subject of their application, the Court observes that the analysis for determining whether the plaintiff has established a prima facie case of discrimination through circumstantial evidence [4] is the same

---

4. Contrary to the plaintiff's contention, the plaintiff does not set forth any direct evidence of discrimination so as to render inapplicable the

shifting-burdens analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which applies only where

under Title VII as it is under the following additional statutes pursuant to which he seeks relief: 42 U.S.C. §§ 1981 and 1983, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (employment discrimination claim under 42 U.S.C. § 1981) (citing *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (ADEA case); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.) (age discrimination case under New York law), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Bunch v. Bullard,* 795 F.2d 384, 387 n. 1 (5th Cir.1986) (when 42 U.S.C. §§ 1981 and 1983 are used as parallel causes of action to Title VII, the claims are analyzed the same way); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773 (11th Cir.1982) (employing shifting-burdens analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in race discrimination case brought against state actor under 42 U.S.C. § 1983). Accordingly, the Court construes the defendants' application to seek summary judgment under each of these statutes.

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color ... or national origin...." 42 U.S.C. § 2000e–2(a)(1). "With the goal of 'progressively sharpening the inquiry into the elusive factual question of intentional discrimination,'" the Supreme Court, in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255 & n. 8, 101 S.Ct. 1089, 1094 & n. 8, 67 L.Ed.2d 207 (1981)).

■■■ Under the *McDonnell Douglas* framework, in order to establish discriminatory treatment, a plaintiff first bears the burden of establishing a prima facie case of discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. A plaintiff establishes a prima facie case by proving by a preponderance of the evidence: (i) that he belongs to a protected class; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094; *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. The establishment of a prima facie case raises a rebuttable presumption that the employer unlawfully discriminated against the employee. *See St. Mary's Honor Center,* 509 U.S. at 506–07, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

■■■ If the plaintiff makes the required showing, a burden of production then shifts to the employer to rebut the prima facie case. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. This burden of production requires the employer to articulate a legitimate non-discriminatory reason, by clearly

indirect or circumstantial evidence of discrimination is presented. *See Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (program document stating that certain benefits were directly linked to an employee's age constituted direct evidence of discrimination; accordingly, the *McDonnell Douglas* framework did not apply); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1183–85 (2d Cir.) (noting that courts have distinguished "indirect evidence" from "direct evidence" on the basis that, in the case of "indirect evidence"— which is also referred to as "circumstantial evidence"—the factfinder requires certain inferential steps in order for the fact to be proved), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

setting " 'forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. at 2747 (emphasis in original) (quoting *Burdine,* 450 U.S. at 254–55 & n. 8, 101 S.Ct. at 1094–95 & n. 8).

If the employer succeeds in carrying its burden of production, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Center,* 509 U.S. at 510, 113 S.Ct. at 2749. Rather, the analysis is returned to the traditional burden of proof applicable to civil actions, with the plaintiff retaining the " 'ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination.' " *Id.,* at 508, 113 S.Ct. at 2747–48 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). Thus, even should the trier of fact disbelieve the reason for the employment decision proffered by the employer, this alone is not enough to hold the employer liable under Title VII, because the plaintiff still must prove that the employer intentionally discriminated on the basis of an unlawful motive. *See id.,* 509 U.S. at 510–11, 113 S.Ct. at 2749; *Pearlstein v. Staten Island Univ. Hosp.,* 886 F.Supp. 260, 265–66 (E.D.N.Y.1995); *Williams v. Port Auth.,* 880 F.Supp. 980, 989–90 (E.D.N.Y.1995).

Having set forth the governing analysis, the Court now turns to examine the record with respect to each of the positions at issue in this case. With one exception, the defendants contend that the plaintiff fails to make out a prima facie case of discrimination because he was not qualified for the positions for which he applied, as evidenced through his failure to pass the applicable civil service examinations. In the case of the position of Assistant to Medical Supply Supervisor—for which it is undisputed that the plaintiff passed the civil service examination—the defendants assert that the plaintiff fails to make out a prima facie case because he was never rejected for this position.

*1. Position of Veterans' Counselor II*

Plaintiff did not take Examination 60–008 for the position of Veterans' Counselor II. According to the plaintiff, he did not sit for this examination because the defendant Nassau County Civil Service Commission, acting with discriminatory intent, refused to process his application to take this test. The defendants, in turn, contend that the plaintiff was not permitted to take this examination because he did not meet the minimum requirements for this position of having a bachelor's degree and the necessary work experience. *See* Defs.' Statement of Material Facts ¶ 12.

The examination announcement for the position of Veterans' Counselor II sets forth the following minimum qualifications: *MINIMUM QUALIFICATIONS:* Must be met by the date of the written test: Bachelor's degree from a regionally accredited or New York State registered college or university
and
One year of satisfactory, paid or volunteer experience with a recognized agency, performing advisory duties in veterans affairs. *NOTE:* Experience, as outlined above, in excess of the one-year requirement may be substituted for college education on a year-for-year basis, up to a maximum of four years.
*Necessary Special Requirement*—Evidence of being an honorably discharged veteran of the armed forces of the United States.
Defs.' Notice of Motion, Ex. I, at 2 (emphasis in original). The plaintiff does not dispute that he lacks a "Bachelor's degree from a regionally accredited or New York State registered college or university." *Id.* In addition, the plaintiff does not set forth any evidence to show that, in lieu of this educational requirement, he possesses four years of paid or volunteer experience with a recognized agency, performing advisory duties in veterans affairs, in excess of the general one-year experience requirement for this position. The Court further observes that the plaintiff fails to set forth a genuine issue of fact concerning whether these requirements constitute "a reasonable measure of job per-

formance," *Griggs v. Duke Power Co.,* 401 U.S. 424, 436, 91 S.Ct. 849, 856, 28 L.Ed.2d 158 (1971), or whether the Nassau County Civil Service Commission deviated from the practice of hiring only those persons who met these requirements. *See Williams,* 880 F.Supp. at 990. Accordingly, plaintiff's failure to possess the qualifications requisite for this position warrants the dismissal of this claim for failure to establish a prima facie case.

### 2. *Position of Mosquito Control Inspector Trainee*

■ The defendants seek summary judgment dismissing plaintiff's claim with respect to the position of mosquito control inspector trainee. The plaintiff does not dispute the defendants' contention that he failed to appear to take the civil service examination (Examination 67–654) for this position. *See* Defs.' Statement of Material Facts ¶ 13; Defs.' Notice of Motion, Ex. J, at 1; Defs.' Notice of Motion, Ex. K, at 5. Once again, the plaintiff does not set forth a genuine issue of fact concerning whether this examination constitutes "a reasonable measure of job performance," *Griggs,* 401 U.S. at 436, 91 S.Ct. at 856, or whether the Nassau County Civil Service Commission deviated from the practice of hiring only those persons who passed this examination. *See Williams,* 880 F.Supp. at 990. Accordingly, plaintiff's failure to sit for the civil service examination warrants the dismissal of this claim for failure to establish a prima facie case.

### 3. *Positions of (a) Storekeeper I, (b) Automotive Parts Storekeeper, and (c) Automotive Parts Storekeeper, Supervisor*

The defendants next move for summary judgment dismissing plaintiff's claims with respect to those positions for which he failed the civil service examination, to wit, the positions of: (a) Storekeeper I (Examination 65–247), (b) Automotive Parts Storekeeper (Examination 65–935), and (c) Automotive Parts Storekeeper, Supervisor (Examination 68–853). With respect to each of these examina-

tions, the Nassau County Civil Service Commission informed the plaintiff that he did not obtain the minimum passing score of 70. According to the defendants, this negates the plaintiff's ability to establish a prima facie case because he is unable to show that he was qualified for these positions.

The plaintiff, in turn, contends that his receipt of failing scores on these examinations was attributable to the defendants' intentionally incorrect scoring of his examinations because of his race and national origin, *see* Am.Compl. ¶ 18, and their failure to adjust his score upwardly, for the same discriminatory reasons, to take into account his eleven years of experience in the armed forces. *See id.* ¶ 19. According to the plaintiff, such upward adjustment to reflect his status as a veteran is required pursuant to section 85 of the New York Civil Service Law. *See id.* ¶ 20; N.Y.Civ.Serv.Law § 85 (1983 & Supp.1996). Specifically, section 85(2)(a)(2) entitles "[n]on-disabled veterans [5] ... to receive five points additional credit in a competitive examination for original appointment...." N.Y.Civ.Serv.Law § 85(2)(a)(2) (McKinney 1983).

■ In the present case, the plaintiff received the following raw (unadjusted) scores on the three examinations that he purportedly failed: (a) Storekeeper I: 62.0; (b) Automotive Parts Storekeeper: 67.0; and (c) Automotive Parts Storekeeper, Supervisor: 63.0. *See* Defs.' Notice of Motion, Ex. J–L. It is undisputed that a grade of 70 was needed to "pass" each of these examinations. *See* Pl.'s Notice of Motion, Ex. F, at 1; Defs.' Notice of Motion, Ex. L. The Court observes that the addition of five points to the plaintiff's score on the examination for the position of Automotive Parts Storekeeper would raise his score to 72.0. Even without considering the potential effect of this adjustment, however, the Court is unable to conclude that no triable issues of fact exist with respect to the determination of whether the plaintiff's raw scores on these examinations were affected by discriminatory conduct.

---

**5.** The plaintiff does not assert that he is a "disabled veteran" within the meaning of the statute. Such status would provide him with additional credits on competitive examinations. *See*

N.Y.Civ.Serv.Law § 85(1)(b) (McKinney Supp. 1996) (defining the term "disabled veteran"); *id.* § 85(2)(a)(1) (McKinney 1983) (describing adjustment to score for "disabled veterans").

*See Gallo,* 22 F.3d at 1224 (A district court should be cautious about granting summary judgment to an employer in an employment discrimination case where intent is at issue.). Accordingly, with respect to each of these positions, the defendants' motion for summary judgment is denied.

### 4. *Assistant to Medical Supply Supervisor*

■ The defendants also move for summary judgment dismissing plaintiff's complaint with respect to the position of Assistant to Medical Supply Supervisor (Examination 63–057). The plaintiff passed the civil service examination for this position in 1991, but was not certified as eligible for this position until 1995, approximately four years later. According to the plaintiff, this delay was attributable to the defendants' pretextual assertion that he failed to satisfy the residency requirement.

The defendants contend that plaintiff is unable to establish a prima facie case with respect to this position because he was recently certified as eligible for this job, and consequently was not *finally rejected* for this position. This contention is meritless, however, as the record shows that the Nassau County Civil Service Commission informed the plaintiff, as long ago as 1991, that he was disqualified for this position because he failed to meet the residency requirement. *See* Defs.' Notice of Motion, Ex. O; Pl.'s Notice of Motion, Ex. N. Accordingly, with respect to this position, defendants' motion for summary judgment is denied.

### III. Plaintiff's Motion for Summary Judgment

The plaintiff cross-moves for summary judgment against the defendants and asserts two principal arguments in support of his application.

■ First, plaintiff contends that the documentary evidence in the record establishes that the defendants have intentionally discriminated against him. The Court's review of the record, however, fails to establish that this conclusion is directed. Otherwise stated, a reasonable jury could find that the defendants' actions in, *inter alia,* (i) grading his examinations, (ii) failing to provide him with additional credit to reflect his status as a veteran, and (iii) disqualifying his application for employment because he failed to meet the Nassau County residency requirement, were not motivated by discriminatory animus. Accordingly, this aspect of plaintiff's motion for summary judgment must be denied.

■ Second, plaintiff contends that summary judgment is warranted with respect to his procedural due process claim stemming from the defendants' failure to afford him a hearing to determine his residency status. This application likewise must be denied. Even assuming that the plaintiff possessed a liberty interest entitling him to constitutionally sufficient procedures attending the determination of his residency status, it is well established that in order for a random and unauthorized act of a state official to give rise to a constitutional deprivation, the state conduct complained of must be intentional, or manifest deliberate indifference to the plaintiff's constitutional rights. *See Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) (citations omitted). Based upon the record, a reasonable jury could find that the defendants' allegedly improper consideration of his residency status resulted from a *negligently* conducted investigation. *See* Defs.' Notice of Motion, Ex. P (business record describing investigation of plaintiff's residency status, dated Aug. 7, 1991). The Supreme Court has held that merely negligent conduct is insufficient to implicate the Due Process Clause of the Fourteenth Amendment. *See Daniels,* 474 U.S. at 330–31, 106 S.Ct. at 664.

Moreover, a reasonable jury could find that the plaintiff was afforded a sufficient opportunity to be heard concerning his residency status, thereby impelling the conclusion that he received all the process that he was due under the Fourteenth Amendment. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (requiring consideration of the following factors in determining whether a person has been accorded constitutionally sufficient procedures attending a deprivation: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous depriva-

tion of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail). Indeed, the record permits a reasonable inference to be drawn that, in accordance with the procedures established pursuant to section 50(4) of the New York Civil Service Law, the plaintiff was in fact "given a written statement of the reasons [for his disqualification on the basis of residency] and afforded an opportunity to make an explanation and to submit facts in opposition to such disqualification." N.Y.Civ.Serv.Law § 50(4) (McKinney 1983 & Supp.1996).[6] Specifically, the record shows that the plaintiff received three separate written notices from the Nassau County Civil Service Commission, dated August 16, 1991, September 20, 1991, and October 4, 1991, informing him that he was being disqualified because he failed to meet the residency requirement. The September 20th letter specifically refers to the Commission's consideration of materials submitted to it by the plaintiff with respect to his residency status. In addition, the October 4th letter specifically notes the Commission's review of the plaintiff's correspondence dated September 24, 1991, in which the plaintiff presumably presented his factual contentions pertinent to establishing his residency in Nassau County since 1989. Moreover, an internal memorandum of the Commission, dated September 17, 1991, makes reference to a letter from the plaintiff, dated August 22, 1991, in which he appeals his disqualification. *See* Pl.'s Notice of Motion, Ex. N. Accordingly, this aspect of the plaintiff's summary judgment motion likewise must be denied.

## IV. Plaintiff's Application for a Preliminary Injunction

Finally, the plaintiff moves for a preliminary injunction enjoining the defendants

from filling a civil service position that was the subject of the parties' settlement negotiations with another candidate during the pendency of this action, or alternatively, to have himself placed in this position in the interim. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### A. Facts

The record shows that, during the winter of 1995, the parties engaged in settlement negotiations that focused upon placing the plaintiff in the position of Assistant to Medical Supply Supervisor with the Nassau County Medical Center. As previously discussed, the plaintiff had passed the civil service examination for this position in 1991. In light of the defendants' conclusion, based upon an investigation conducted in March 1995, that the plaintiff indeed had been a resident of Nassau County since 1989, *see* Defs.' Statement of Material Facts ¶ 20; Defs.' Notice of Motion, Ex. Q ¶ 4, a settlement of this action seemed possible if the plaintiff were hired for this position.

On April 4, 1995, an eligible list for Examination 63–057, with respect to the position of Assistant to Medical Supply Supervisor, was established and the plaintiff's name appeared in the third position. *See* Defs.' Statement of Material Facts ¶ 21; Defs.' Notice of Motion, Ex. R. This list contained four names. *See* Defs.' Notice of Motion, Ex. R. Pursuant to section 61(1) of the New York Civil Service Law, the appointing authority has the discretion of selecting "one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment...." N.Y.Civ.Serv.Law § 61(1) (McKinney 1983).

---

**6.** The Court observes that this statute has been construed by at least one New York court to be "broad enough to permit a hearing when such is required by the circumstances of the case." *Canarelli v. New York State Dep't of Civil Serv.*, 44 A.D.2d 645, 353 N.Y.S.2d 275, 277 (4th Dep't. 1974) (employee terminated approximately one and a half years after commencing work in civil service position). As the defendants have not

addressed the plaintiff's procedural due process claim on their motion for partial summary judgment, it remains to be determined at trial whether the safeguards actually employed by the Nassau County Civil Service Commission were sufficient under both the Fourteenth Amendment and (as a pendent state claim) section 50(4) of the New York Civil Service Law.

On April 19, 1995, this list was forwarded to the appropriate appointing authority, in this case, the Nassau County Medical Center, and on April 24, 1995, a letter was sent to the plaintiff to determine whether he was willing to interview for this position. *See* Defs.' Statement of Material Facts ¶¶ 22–23.

On May 9, 1995, plaintiff interviewed for the position of Assistant to Medical Supply Supervisor. *See id.* ¶ 24. Plaintiff, however, was not offered this job. Instead, this position was offered to Philip Hytower, whose name appeared fourth on the list. *See* Defs.' Notice of Motion, Ex. P. According to Elaine Sedotto, R.N., the Acting Director of Central Services at the Nassau County Medical Center, who interviewed both applicants, Mr. Hytower was the more qualified candidate in view of his experience in surgical instrument care and procedure tray assembly, decontamination and sterilization, as well as supply processing and equipment management. Mr. Hytower, at the time of his interview, also was presently employed by the Nassau County Medical Center. In contrast, the plaintiff lacked experience in surgical instrument care, maintenance and sterilization. *See* Olchin Aff., Mem. from Elaine Sedotto R.N. to David Pappalardo, Director of Human Services, dated June 15, 1995 (Docket # 104).

The plaintiff asserts that the failure of Nassau County Medical Center to offer him the position of Assistant to Medical Supply Supervisor demonstrates bad faith on the defendants' part. As evidence of the defendants' alleged bad faith, plaintiff claims that he was treated poorly by the interviewer insofar as she was unaware that the plaintiff's interview had been scheduled, required the plaintiff to complete two separate applications, gave the plaintiff an oral examination, and requested that he provide releases with respect to all prior employers. Thus, according to the plaintiff, it was a foregone conclusion that he would not be hired. *See* Pl.'s letter to the Court dated July 20, 1995 (Docket # 103). Further, in response to the defendants' contention that they lack control over whom the Nassau County Medical Center chooses to hire, the plaintiff asserts that this employer is necessarily subordinated in its hiring decisions to defendant Nassau County. Finally, the plaintiff contends that the defendants led him to believe that he would be offered this position.

The plaintiff further asserts that he will be irreparably harmed if a preliminary injunction is not issued because his opportunity to obtain employment with the Nassau County Medical Center would become moot, at least in part, absent the entry of such order.

### B. *Legal Analysis*

■ "To obtain a preliminary injunction, a plaintiff must demonstrate: (1) *either* a likelihood that he will succeed on the merits of his claim, *or* that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994) (emphasis in original) (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135–36 (2d Cir.1992); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir. 1985)).

■ Upon careful consideration of the record,[7] the Court finds that the plaintiff fails to meet the second prong of the preliminary injunction test as he is unable to establish "that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim." *Fisher–Price*, 25 F.3d at 122. Simply stated, the Court is unaware of any impediment preventing the plaintiff from actively seeking employment in the private sector while this litigation is pending. The fact that he desires a specific civil-service job that was the subject of the parties' settlement negotiations is insufficient to show irreparable harm. As a corollary to this determination, the Court expressly finds, based upon the record, that no substantial

---

7. The plaintiff has not requested a hearing in support of his application for a preliminary injunction, and instead relies upon the documentary evidence that he has submitted. *See* Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment and Preliminary Injunction ¶ 16 (Docket # 107).

issue is presented concerning whether the parties' settlement negotiations acceded to the level of an enforceable agreement. Indeed, the plaintiff himself asserts little more than a hope of obtaining the civil service job that he interviewed for. Although he is understandably frustrated that his aspiration did not come to fruition, this does not provide a basis for the Court to conclude that a binding agreement was reached. In addition, the Court finds the plaintiff's assertions of bad faith on the part of defendants' counsel in their settlement negotiations to be unpersuasive. Accordingly, plaintiff's application for a preliminary injunction must be denied.[8]

### CONCLUSION

For the foregoing reasons, the Court enters the following orders in this action:

1. Defendants' motion for summary judgment dismissing the plaintiff's employment discrimination claims under Title VII, the Age Discrimination in Employment Act, and under 42 U.S.C. §§ 1981 and 1983, is GRANTED for failure to establish a prima facie case with respect to the following positions:

(a) Veterans' Counselor II (Examination 60–008); and

(b) Mosquito Control Inspector Trainee (Examination 67–654).

2. Defendants' motion for summary judgment dismissing the plaintiff's employment discrimination claims under Title VII, the Age Discrimination in Employment Act, and under 42 U.S.C. §§ 1981 and 1983, is DENIED in its entirety with respect to the following positions:

(a) Storekeeper I (Examination 65–247);

(b) Automotive Parts Storekeeper (Examination 65–935);

(c) Automotive Parts Storekeeper, Supervisor (Examination 68–853); and

(d) Assistant to Medical Supply Supervisor (Examination 63–057).

3. Plaintiff's motion for summary judgment is DENIED in its entirety.

4. Plaintiff's motion for a preliminary injunction is DENIED in its entirety.

5. The Court observes that, in addition to the employment discrimination claims described in item 2 above, the following claims remain for trial:

(a) Plaintiff's procedural due process claims under 42 U.S.C. § 1983;

(b) Plaintiff's conspiracy claims under 42 U.S.C. § 1985(3); and

(c) Plaintiff's pendent claims under the New York Civil Service Law.

SO ORDERED.

---

**8.** As an independent basis for its conclusion, the Court expressly finds that the plaintiff also fails to satisfy the first prong of the preliminary injunction analysis, concerning the merits of the case, with respect to both his employment discrimination claims and his procedural due process claims. *See supra* Discussion Part III (setting forth applicable substantive analyses).