**Ralph M. PURDY, Plaintiff,**

v.

**TOWN OF GREENBURGH, Paul J. Feiner, Individually and as Supervisor of the Town of Greenburgh, and John Kapica, Individually and as Chief of Police of the Town of Greenburgh Police Department, Defendants.**

No. 00 Civ. 4363(WCC).

United States District Court,
S.D. New York.

Sept. 26, 2001.

Law Offices of Thomas P. Halley, Poughkeepsie, NY (Thomas P. Halley, of counsel), for plaintiff.

Traub Eglin Lieberman Straus, Hawthorne, NY (Richard K. Traub, Mario Castellitto, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Ralph M. Purdy brings the instant action against defendants Town of Greenburgh ("the Town"), Paul J. Feiner, individually and as supervisor of the Town and John A. Kapica, individually and as Chief of Police of the Town, pursuant to 42 U.S.C. §§ 1981, 1983 and the New York State Human Rights Law, Exec.Law § 296 *et seq.* ("NYHRL"). Plaintiff alleges that as a result of age discrimination he was denied employment with the Greenburgh Police Department ("GPD"). Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiff cross-moves for leave to amend the Complaint to allege a violation of the First and Fourteenth Amendments of the United States Constitution for unlawful retaliation and of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). For the reasons that follow, plaintiff's motion is granted in part and denied in part and defendants' motion is granted in part and denied in part.

### BACKGROUND

Plaintiff was born on November 10, 1936. (Purdy Aff. ¶ 18.) On April 25, 1960 he was hired by the GPD and served as a police officer for approximately sixteen years. (Pl.Dep. at 24.) On February 20, 1976, plaintiff was terminated for knowingly violating Chapter 9.5.14 of the GPD Rules and Regulations after an evidentiary hearing was held before the Town Board (the "Board").[1] (Defs.Ex.G.) During the hearing, the Board considered charges arising out of a letter written in October 1975 on Police Association letterhead, signed by plaintiff as President of the Greenburgh Police Association and distributed to members of the GPD. The letter solicited contributions for the upcoming general election to oppose the re-election of then Town Supervisor Anthony Veteran. (Defs.Ex.G.) Plaintiff mailed a similar letter to Greenburgh residents. The Board rejected plaintiff's First Amendment defense and found that he used his official power as a police officer in an impermissibly political manner, thereby demonstrating conduct that "seriously affect[s] his general character, fitness and efficiency as a police officer." (Defs.Ex.G.)

Following the Board's decision, plaintiff initiated a proceeding under N.Y.C.P.L.R. § 7801 ("Article 78 proceeding") challenging the Board's decisions and findings. In *Purdy v. Kreisberg,* 59 A.D.2d 939, 399 N.Y.S.2d 458 (2d Dept.1977) ("*Purdy I*"), the Appellate Division, Second Department, reversed the Board's determination. On appeal, the New York Court of Appeals reversed the Second Department and reinstated the Board's determination. *Purdy v. Kreisberg,* 47 N.Y.2d 354, 418 N.Y.S.2d 329, 391 N.E.2d 1307 (1979) ("*Purdy II*"). The court of appeals found that there was substantial evidence supporting the Board's decision and that the penalty imposed was not unduly harsh. *See Purdy II,* 418 N.Y.S.2d at 333, 391 N.E.2d 1307. In reaching the decision, the court held chapter 9.5.14 of the GPD Rules and Regulations constitutional under the First Amendment as a legitimate means of maintaining the integrity and effectiveness of the police department. *See id.* at 333–34, 391 N.E.2d 1307.

---

1. The rule states: "Members shall not use nor threaten to use their official power or authority in any manner, directly or indirectly, in aid of or against any political party or organization, association, or society." (Defs.Ex.G.)

Plaintiff has not been employed as a police officer since 1976. He has, however, served as president of various interrelated police and security organizations[2] that negotiate labor contracts and provide benefits, legal services, labor relations and lobbying services to its members. (Pl. Dep. at 8– 15.) In December 1988, the New York Attorney General's Office (the "AGO") brought suit against three of the organizations, New York State Federation of Police, Inc., United Federation of Police Officers, Inc. and Tri–County Police Federation, Inc. for fraudulent telephone solicitation. *See People v. New York State Fed'n of Police, Inc.*, 188 A.D.2d 689, 590 N.Y.S.2d 573 (3d Dept.1992). The New York Supreme Court granted a preliminary injunction against the organizations, barring them from soliciting funds from the public absent a script approved by the AGO. *See id.* at 574.

After finding that the organizations solicited funds without using the script, the court in March 1990 modified the injunction by prohibiting the organizations from any solicitation of contributions. The court also enjoined plaintiff from personally soliciting funds from the public through any corporation or entity. *See id.* at 574–75. The decision was later affirmed by the Third Department, finding that plaintiff "potentially abused his control of [the organizations] by engaging in activity in violation of [the] Supreme Court's preliminary injunction." *See id.* at 575. The case was ultimately settled by a Stipulation and Entry of a Consent Judgment on November 7, 1995 in which the defendants, constituting the organizations and plaintiff individually, although not admitting wrongdoing, agreed to a permanent injunction prohibiting them from engaging in telephone solicitation without a script approved by the Attorney General. (Defs.Ex. J.)

The events leading to the instant action began in March 1995 when plaintiff sent Greenburgh Town Supervisor Paul Feiner a letter expressing his interest in applying for a position as police officer. Feiner referred plaintiff to Police Chief Kapica. As Chief, Kapica has authority to make final recommendations to appoint applicants to the position of police officer. Actual appointments are made by vote of the Board. (Kapica Aff. ¶ 3.) On April 2, 1996, plaintiff submitted a completed application for employment with the GPD. (DeCarlo Aff. ¶ 4, Ex. A.) Plaintiff revealed in the application the prior termination by the GPD and all subsequent published court decisions as well as the investigation by the AGO. (*Id.*) The application was then brought to Kapica's attention. Although the reasons for the determination are in dispute, Kapica decided that plaintiff was not qualified and that he would not recommend him for appointment as a police officer.

In or about June 1996, plaintiff had a conversation with then Lieutenant Joseph J. DeCarlo during which plaintiff was advised that he was not being considered for appointment. (Pl.Dep. at 104.) Plaintiff has subsequently submitted several additional employment applications in response to letters received from Greenburgh's Office of the Comptroller inquiring as to plaintiff's interest in a position. (Purdy Aff., Ex. B.) The most recent such application was submitted in response to an inquiry letter dated June 12, 2000. (*Id.*) Plaintiff filed a Charge of Discrimination with

---

2. The respective duties and responsibilities of each organization are unclear. At least one organization, the Tri–County Federation of Police, Inc., has been inactive since 1994. The remaining three, United Federation of Police Officers, Inc., New York State Federation of Police, Inc. and United Federation of Security Officers, Inc., all share the same headquarters and files, and list plaintiff as the President. (Pl.Dep. at 8–15.)

the Equal Employment Opportunity Commission ("EEOC") on February 28, 2000, alleging age discrimination. (Castellitto Decl., Ex. K.) On March 13, 2000, the EEOC determined that it did not have jurisdiction over the claim. (Castellitto Decl., Ex. L.) On June 13, 2000, plaintiff filed the instant Complaint alleging age discrimination under §§ 1981, 1983 and the NYHRL. On July 10, 2000, the EEOC decided to reinstate its investigation and on September 12, 2000 sent a Notice of Right to Sue letter with respect to his ADEA claims. (*Id.*)

## DISCUSSION

### I. *Leave to Amend*

FED.R.CIV.P. 15(a) allows a party to amend its pleading more than twenty days after being served, or after a responsive pleading has been served, only with the court's permission. The rule instructs that "leave shall be freely given when justice so requires." The Supreme Court has held that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be freely given.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–35 (2d Cir.1995).

▮▮▮ The Second Circuit instructs lower courts to allow amendment, even in the face of substantial delay, unless the movant has acted in bad faith, the amendment will prejudice the non-movant or the amendment is futile. *See Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (stating that

"[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend") (citations omitted); *McCoy v. Goldberg,* 845 F.Supp. 155, 157 (S.D.N.Y.1994) (Conner, J.). Because a responsive pleading has already been served, leave to amend must be obtained from the district court. FED.R.CIV.P. 15(a). The grant or denial of leave to amend is squarely within the discretion of the trial court. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227.

### A. *Proposed ADEA Claim*

▮▮▮ Defendants object to the amendment on the grounds of prejudice and undue delay. Defendants contend that plaintiff unduly delayed raising an age discrimination claim under the ADEA. Specifically, they argue that because plaintiff did not move to amend until after discovery was closed and then only in response to defendants' motion for summary judgment, and because plaintiff was aware of the facts on which the proposed amendment is based at the time he filed the original Complaint, we should deny plaintiff's motion. We disagree. Although plaintiff could have, and perhaps should have, asserted his ADEA claim earlier, mere delay absent aggravating circumstances is insufficient cause to deny leave to amend. *See McCoy,* 845 F.Supp. at 158 ("delay alone is [not] sufficient grounds for denying leave to amend. . . . [S]uch delay must be accompanied by either bad faith, prejudice, or futility to warrant [denial]"). No such aggravating circumstances are present here.

Defendants also argue that they will be prejudiced by the addition of a claim after discovery was completed and a motion for summary judgment has been served. However, the claim plaintiff seeks to add arises from the same set of facts as the

claims asserted in the original Complaint and is based upon the same theory of liability. *See Hanlin v. Mitchelson,* 794 F.2d 834, 841 (2d Cir.1986) (granting leave to amend after discovery had been completed and a motion for summary judgment filed because "the new claims [were] merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint"). Because plaintiff's original claim clearly asserts a claim premised on age discrimination under § 1983, defendants will not be unfairly prejudiced by the addition of an ADEA claim.

The cases on which defendants rely do not support denial of leave to amend. In *Schnepf v. Siegel,* No. 98 Civ. 1255, 1998 WL 474132 (S.D.N.Y. July 11, 1998), the court noted that "[d]elay ... is generally not, in and of itself, a reason to deny a motion to amend," but nonetheless found sufficient prejudice to deny amendment because the "new claim would require new discovery, including the retention of additional and different expert witnesses by defendant." *Id.* at *4. No similar prejudice is alleged here. Likewise, in *Cahill v. O'Donnell,* 75 F.Supp.2d 264, 279 (S.D.N.Y.1999), the court relied on *Ansam Assoc., Inc. v. Cola Petroleum Ltd.,* 760 F.2d 442 (2d Cir.1985) in denying leave to amend. This case is factually distinguishable in that the party in *Ansam* sought to assert new claims regarding a different time period and concerning an entirely new set of facts then the original complaint. *See id.* at 446. Finally, in *Sowemimo v. D.A.O.R Sec., Inc.,* 43 F.Supp.2d. 477, 483 (S.D.N.Y.1999), the court in its discretion denied leave to amend, finding prejudice to the plaintiff. This Court does not so find. Accordingly, plaintiff's motion to amend the complaint to add a claim under the ADEA is granted.

### B. *Proposed First Amendment Retaliation Claim*

■ Plaintiff moves this Court to amend the Complaint and assert a First Amendment retaliation claim. He alleges that defendants' failure to hire him as a police officer was in retaliation for the two letters opposing Veteran's candidacy in 1975. Defendants object because such an amendment would be futile.

■ When a cross-motion for leave to amend is made in response to a FED. R.CIV.P. 56 motion for summary judgment,

> even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c).

*Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). To establish a prima facie § 1983 freedom of speech claim, plaintiff must demonstrate by a preponderance of the evidence that: 1) the speech at issue is protected; 2) he suffered an adverse employment action; and 3) there was a causal connection between the protected speech and the adverse employment action. *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *Kane v. Krebser,* 44 F.Supp.2d 542, 545 (S.D.N.Y.1999) (Conner, J.).

To establish a constitutional violation, the speech must be of a type protected by the First Amendment. Because a court of competent jurisdiction has already determined that plaintiff's speech was not constitutionally protected, this Court need not decide the issue. In *Purdy II,* plaintiff argued that Chapter 9.5.14 infringed his First Amendment rights. The New York Court of Appeals held that "[t]he rule, the clear import of which proscribes the use of police authority in the political spectrum,

certainly a legitimate and worthwhile objective, must be sustained as constitutional." *Purdy II,* 418 N.Y.S.2d at 333–34, 391 N.E.2d 1307. Contrary to plaintiff's assertions, this determination has not been overruled.

Plaintiff relies on *Lecci v. Cahn,* 360 F.Supp. 759 (E.D.N.Y.1973). There, though the district court held a similar provision of the Election Law unconstitutional, the decision was vacated on appeal. The Second Circuit held that the district court lacked jurisdiction to review the state court's determination that the law was constitutional. *See Lecci v. Cahn,* 493 F.2d 826, 829 (2d Cir.1974). Plaintiff also cites the Opinion of the New York State Board of Elections (the "Opinion"). (Pl. Mem.Supp.Mot.Amend., Ex. A.) The Opinion, which states that a police officer as a private citizen may endorse a political candidate, is inapplicable here because plaintiff was sanctioned for his political endorsement not as a private citizen but as a police official.[3]

 Under New York law, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984). Collateral estoppel will apply only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *See Colon v. Coughlin,* 58 F.3d 865, 869 n. 2 (2d Cir.1995). The party asserting pre-

clusion carries the burden of establishing that the issue was actually and necessarily decided, but once that burden is met, the party opposing preclusion must demonstrate a lack of a full and fair opportunity to litigate. *See id.* at 869.

 A federal court hearing a § 1983 case will afford the same preclusive effect to a prior state court decision as the decision would receive in state court. *See* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82–83, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). A judicial affirmation of an administrative determination is also entitled to preclusive effect. *CIBA Corp. v. Weinberger,* 412 U.S. 640, 93 S.Ct. 2495, 37 L.Ed.2d 230 (1973). Once affirmed, these decisions constitute state court judgments and are entitled to full preclusive effect in § 1983 actions under the Full Faith and Credit Statute. *See* 28 U.S.C. § 1738; *Migra,* 465 U.S. at 82–83, 104 S.Ct. 892; *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir.1999).

There is no dispute that the constitutionality of the police regulation was actually and necessarily decided by the New York Court of Appeals. *See Purdy II,* 418 N.Y.S.2d at 334, 391 N.E.2d 1307. Although unclearly, plaintiff seemingly argues that he was not afforded a full and fair opportunity to litigate the First Amendment claim because it was brought pursuant to an Article 78 proceeding. However, an Article 78 proceeding is entitled to full preclusive effect providing the criteria for issue preclusion are met, as they are here. *See Crosland v. City of New York,* 140 F.Supp.2d 300, 308–11 (S.D.N.Y.2001) (finding issue preclusion when plaintiff's First Amendment claim

---

**3.** The Opinion further states that "[w]hile the Board is of the opinion that such activity is not a criminal violation . . . , it should be noted that before a police officer endorses any candidate or engages in any political activity,

he or she should research general laws, local laws, regulations of his or her particular police department, and any applicable collective bargaining agreements to see if such political activity is prohibited." (Opinion at 3.)

was decided against him in a previous Article 78 proceeding). Plaintiff was represented by counsel and had every opportunity to argue, and in fact did argue, that his speech was protected by the First Amendment. That his argument was ultimately unpersuasive in state court does not entitle plaintiff to relitigate in front of a federal tribunal. This is precisely the kind of judicial inefficiency collateral estoppel is designed to avoid.

In support of his position, plaintiff calls the Court's attention to three Second Circuit decisions.[4] It is unnecessary to discuss each in detail, because all are inapplicable. Plaintiff has confused the concepts of claim preclusion, or res judicata, and issue preclusion, or collateral estoppel. Defendants do not raise a res judicata argument that plaintiff is barred from bringing the First Amendment claim because he could have, but failed to, raise it in the previous Article 78 proceeding. On the contrary, plaintiff did raise and fully litigated the claim in the prior proceeding. The issue is thus one of collateral estoppel and the claim is barred. As a result, it is unnecessary to decide whether the remaining elements of a First Amendment retaliation claim are satisfied.

Because plaintiff has raised no genuine issues of material fact, defendants are entitled to judgment as a matter of law. Therefore, we deny plaintiff's motion for leave to amend the Complaint to include a First Amendment retaliation claim.

## II. *Summary Judgment Standard*

Defendants move for summary judgment pursuant to FED.R.CIV.P. 56. Sum-

mary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali*, 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir.1991).

Finally, in a discrimination case, the court must be particularly cautious about awarding summary judgment to a defendant employer where intent is at issue. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994). We are mindful that in cases where the employer's state of mind or motives are at issue, records of the employer will

---

4. *See Leather*, 180 F.3d at 420 (holding that because plaintiff could not have sought damages in the original action, his subsequent § 1983 case was not barred); *Antonsen v. Ward*, 943 F.2d 198 (2d Cir.1991) (res judicata case holding that action for attorneys' fees could have been brought in Article 78 pro-

ceeding, and is therefore barred); *Heimbach v. Chu*, 744 F.2d 11 (2d Cir.1984), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 141 (1985) (stating that res judicata is only appropriate when the original forum could have heard the action that was subsequently brought in another case).

rarely document such factors, and therefore the materials before us in a summary judgment motion "must be carefully scrutinized" for circumstantial evidence about the employer's state of mind and those factors that motivated the challenged action. *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996); *see also Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

### A. *Statute of Limitations*

As a threshold matter, defendants assert that plaintiff's § 1983 and NYHRL claims based on defendants' acts prior to June 13, 1997 are time barred. Plaintiff argues that the alleged discriminatory acts constitute a continuing violation dating back to the first refusal to hire him in 1996. Because plaintiff has failed to produce evidence of a policy of discrimination, we hold that the alleged discriminatory acts prior to June 13, 1997 are time barred.

 In New York, a three-year statute of limitations applies to actions brought pursuant to both § 1983 and the NYHRL. *See Owens v. Okure*, 488 U.S. 235, 249–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); N.Y. C.P.L.R. § 214(2). Under the continuing violation doctrine, "a timely charge with respect to any incident of discrimination in furtherance of a policy of discrimination renders claims against other discriminatory actions taken pursuant to that policy timely, even if they would be untimely if standing alone." *Connecticut Light & Power Co. v. Secretary of the U.S. Dep't of Labor*, 85 F.3d 89, 96 (2d Cir. 1996). Courts in the Second Circuit view continuing violation arguments with disfavor and, in particular, the doctrine is generally not applied in discriminatory hiring cases. *See Wilkins v. New York City Dep't of Prob.*, No. 98 Civ. 6611, 2001 WL 262601, at *3 (S.D.N.Y. March 15, 2001). An allegation of several discriminatory acts, even similar ones, does not, in and of itself, establish a continuing violation. *Lambert v. Genesee Hospital*, 10 F.3d 46, 52 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Rather, "[a] continuing violation exists where there is a relationship between a series of discriminatory actions and an invalid, underlying policy." *Connecticut Light & Power*, 85 F.3d at 96.

 To avail himself of the continuing violation doctrine, plaintiff must prove: (1) an underlying discriminatory policy or practice; and (2) an action taken pursuant to that policy during the statutory period preceding filing the complaint. *Id.* On a motion for summary judgment, the court determines whether plaintiff "produced sufficient evidence to establish that there existed a genuine issue of fact whether the defendants' acts were related closely enough to constitute a continuing violation or were merely discrete isolated and completed acts which must be regarded as individual violations." *Flynn v. Goldman, Sachs & Co.*, No. 91 Civ. 0035, 1993 WL 336957, at *6 (S.D.N.Y. Sept. 2, 1993) (internal quotations and citations omitted).

 We find that plaintiff failed to provide sufficient evidence to establish a genuine issue of fact as to whether he was denied employment pursuant to a policy of age discrimination. Merely alleging several distinct acts of discrimination does not establish a continuing violation. *See Lambert*, 10 F.3d at 52. Plaintiff has proffered no evidence that defendants' decision not to hire him was made in connection with a discriminatory policy or practice. There is nothing to indicate that the repeated rejections of plaintiff's employment application were not isolated incidents, and plaintiff has come forward with no other applicants claiming age discrimination. *See Gavigan*

v. *Clarkstown Cent. Sch. Dist.*, 84 F.Supp.2d 540, 545–46 (S.D.N.Y.2000) (Conner, J.) (finding a continuing violation where plaintiff submitted three affidavits of other teachers claiming age discrimination and where plaintiff alleged defendant told her they would not "hire anyone of your age"); *Hansen v. Danish Tourist Bd.*, 147 F.Supp.2d 142, 155 (E.D.N.Y. 2001) (finding continuous violation where "plaintiff's allegations are numerous and include failure to promote, retaliation, failure to pay the wages received by similarly situated employees, and imposing greater responsibilities on the plaintiff than on similarly paid employees").

The only evidence plaintiff cites are the allegations in the Complaint that the alleged discrimination continued over the course of several years and the repeated letters of application sent to the GPD. This evidence is insufficient to create a triable issue of fact as to whether a policy of discrimination existed. Thus, we find that plaintiff's § 1983 and NYHRL claims are subject to New York's three-year statute of limitations. This action was commenced on June 13, 2000. Accordingly, plaintiff's claims based on discriminatory acts occurring prior to June 13, 1997 are time barred.

### B. *42 U.S.C. § 1981*

■■■ Section 1981(a) provides in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

To establish a § 1981 claim, plaintiff must prove that: (1) he is a member of a racial minority; (2) defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). Plaintiff has failed to make any showing of race-based discrimination. In fact, there is no allegation of a race-based claim other then the cursory mention of § 1981 in the Complaint. Accordingly, defendants' motion for summary judgment dismissing the § 1981 claim is granted.

### C. *ADEA and NYHRL Claims*

■■■ The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA covers the class of employees over the age of forty. *See id.* The evidentiary requirements needed to prove age discrimination are the same as those for proving discrimination under 42 U.S.C. § 2000e–5 ("Title VII").[5] *See Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir.1997).

■■■ A claim for employment discrimination is governed by the three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the bur-

---

5. The standards apply equally to federal and New York State law claims brought under Title VII and the NYHRL. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir. 2000); *Leopold v. Baccarat*, 174 F.3d 261, 264 n. 1 (2d Cir.1999). Thus, our holding applies equally to plaintiff's Title VII and NYHRL claims.

den of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for failing to hire the plaintiff. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination drops out and the plaintiff has the burden of proof by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1. *Plaintiff's Prima Facie Case*

■■■ To establish a prima facie age discrimination claim, plaintiff must show that: (1) he is within the protected age group; (2) he is qualified for the job; (3) he suffered an adverse employment decision; and (4) the employment decision occurred under circumstances giving rise to an inference of age discrimination. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001). The burden to establish a prima facie case is de minimis. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995). Plaintiff may support his claim through direct evidence, but if such evidence is unavailable, "a plaintiff may through statistical evidence establish a pattern or practice of . . . failing to [hire people over forty] . . . from which an inference of age discrimination may be drawn." *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1450 (2d Cir.1995).

Here, plaintiff has met his burden and established a prima facie age discrimination claim. First, plaintiff was sixty-one years old on June 27, 1997 when the GPD rejected him, placing him squarely within the protected class. (See Purdy Aff., Ex. F.) This is the first alleged instance of discrimination after the June 13, 1997 statute of limitations cutoff. There is no dispute that plaintiff was denied employment.

■■■ Plaintiff has also submitted statistical evidence sufficient to create a triable factual issue as to whether an inference of discrimination may be drawn. To qualify as a police officer in the Town, an applicant must complete the Civil Service Examination. The score from the exam is increased by any available veteran's credits to generate a composite score for each applicant. Plaintiff first took this exam in December 1992 and received a score of 80. He subsequently retook the exam, receiving a score of 85. With the addition of five veteran's credits, plaintiff received a composite score of 90. (Purdy Aff. ¶¶ 10–11.) Plaintiff has submitted a list of eligible candidates, noting their dates of birth, composite scores and dates of appointment. (Purdy Aff., Ex. F.) The list indicates that many younger candidates with lower composite scores than plaintiff were appointed as police officers. This statistical evidence is sufficient to satisfy the de minimis summary judgment standard.

■■■ Defendants argue that plaintiff cannot satisfy his prima facie case because he is collaterally estopped from establishing that he is qualified to be a police officer. They contend that the issues of plaintiff's character, fitness and qualifications to be a police officer were previously litigated against him in the hearings held by the Town in 1976, which was later upheld by the New York State Court of Appeals in *Purdy II*. Defendants also assert that plaintiff is estopped from arguing his qualifications because of the Third Department's findings in *New York State Fed'n of Police*.

■■■ We set forth the requirements for collateral estoppel in Section I.B. *supra.* For collateral estoppel to apply, the issue that was actually and necessarily litigated in the first action must be identical to the issue raised in the second. *See Plonka v. Brown*, No. 00–7651, 2001 WL 99834, at *2

(2d Cir. Feb.2, 2001) ("The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action.") (citations omitted). The precise issue litigated in 1976 was whether plaintiff violated Chapter 9.5.14 of the GPD rules prohibiting certain political activities. *See Purdy II,* 418 N.Y.S.2d at 331, 391 N.E.2d 1307. The issue in the instant action is whether plaintiff is qualified to be a police officer. Similarly, the issue litigated and decided in *New York State Fed'n of Police* was whether plaintiff violated the terms of the preliminary injunction. Although plaintiff's prior political activities and attention to court injunctions may ultimately bear on his qualifications to become a police officer, this is a question of fact for the jury. Plaintiff produced ample evidence on this issue. He previously served as a police officer for sixteen years and received a high composite score on the Civil Service Examination. Accordingly, plaintiff has met his burden and established a prima facie ADEA claim.

### 2. *Legitimate, Non-Discriminatory Reasons for Failure to Hire*

[redacted] Once a plaintiff has made out a prima facie case of discrimination, the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for failing to hire the applicant. *See Abdu-Brisson,* 239 F.3d at 468. Defendants state that they decided not to hire plaintiff because "he was not qualified by virtue of his poor moral fitness and character." (Defs.Mem.Supp.Summ.J. at 12.) Specifically, Kapica's reasons for determining that plaintiff was unqualified include plaintiff's previous termination for violating a department rule, the Attorney General's investigation into plaintiff's organizations for fraudulent solicitations, allegations of plaintiff's financial misdeeds [6] and personal knowledge of an encounter plaintiff allegedly had with a citizen as an officer in 1973.[7] (Defs.Rule 56.1 Stmt ¶¶ 41–47.) Defendants have clearly articulated several legitimate, non-discriminatory reasons for failing to hire plaintiff, and therefore have successfully rebutted plaintiff's prima facie case.

### 3. *Pretextual Stage*

[redacted] After finding that the defendants articulated legitimate, non-discriminatory reasons for failing to hire plaintiff, "the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Ctr.,* 509 U.S. at 510, 113 S.Ct. 2742. Instead, the plaintiff is faced with the standard burden of proof in civil action of " 'persuading the

6. Defendants' Rule 56.1 statement of facts ¶ 46 states:

> Chief Kapica was [plaintiff's] successor as President of the Greenburgh Police Association (the "Association") (a position he held from 1976 to 1984). In or about 1976, Chief Kapica initiated a certified audit of the Association's books and records which revealed that [plaintiff] had improperly commingled funds from what should have been a segregated member bond fund account into the Association's operating account. Chief Kapica considered the irregularities discovered during the audit of the Greenburgh Police Association in evaluating Purdy's qualifications.

7. Defendants' Rule 56.1 statement of facts ¶ 47 states:

> As a patrolmen for the Town [ ] in or about 1973, Chief Kapica personally observed [plaintiff] to exercise what he considered to be insensitivity, poor judgment and poor leadership in his role as a supervising sergeant during the response to a complaint regarding an emotionally disturbed person. During that incident, at which patrolman Kapica was personally present, [plaintiff] participated in and condoned a physical confrontation by another officer that led to the escalation of a potentially violent encounter with an obviously emotionally disturbed person.

trier of fact that he has been the victim of intentional discrimination.'" *Id.* at 508, 113 S.Ct. 2742 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see also Philippeaux v. County of Nassau,* 921 F.Supp. 1000, 1009 (E.D.N.Y.1996). However, the plaintiff is "not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin,* 46 F.3d at 203. Although the plaintiff's ultimate burden of persuasion is often satisfied with the introduction of additional evidence showing that the employer's explanation is unworthy of belief, it may also be met solely through reliance on the evidence establishing the prima facie case. *See id; Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 78–79 (2d Cir.2001).

Thus, unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial. *Id.*

■■■ Defendants argue that plaintiff has presented no evidence that defendants considered age in deciding not to hire him. We disagree. Unlike the plaintiffs in the cases cited by defendants, plaintiff here is relying on more than his subjective opinion. *But cf. Layaou v. Xerox Corp.,* 999 F.Supp. 426, 433 (W.D.N.Y.1998) (holding that "[a]n employee's subjective opinion about his qualifications, however, is insufficient to give rise to a triable issue of fact ...."); *Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 317 (2d Cir.1999)

(dismissing age discrimination claim where defendant did not even know plaintiff's age or the age of the other applicants, or the age of applicants relative to each other). On the contrary, as part of his prima facie case plaintiff produced statistical evidence sufficient to raise a triable issue of fact as to whether age was a motivating factor in the hiring decision. The conflict between this evidence and defendants' non-discriminatory reasons presents a triable issue of fact for the jury. The fact that plaintiff produced no additional evidence to rebut defendants' non-discriminatory reason does not necessarily portend failure, for the "plaintiff's burden ... 'may often be carried by reliance on the evidence comprising the prima facie case, without more.'" *Holtz,* 258 F.3d at 79 (quoting *Cronin,* 46 F.3d at 203). Although plaintiff may have substantial difficulty proving these claims at trial, a genuine issue of material fact exists and he is entitled to a jury's resolution of that issue.

### D. *ADEA Preemption of § 1983*

■■■ Plaintiff asserts an age discrimination claim under 42 U.S.C. § 1983. Defendants counter that the ADEA preempts § 1983 and is the exclusive federal remedy for age discrimination. We disagree. It is well established that § 1983 is a procedural mechanism for asserting federal rights and does not in itself create any substantive rights. *See Bruneau v. South Kortright Cent. Sch. Dist.,* 163 F.3d 749, 756 (2d Cir.1998), *cert. denied,* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999). Congress retains the right to modify, repeal or replace § 1983, a statutory creation, with alternative remedies. *See Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

The Second Circuit has not decided whether the ADEA preempts an age dis-

crimination claim brought under § 1983. *See Campbell v. City Univ. Constr. Fund,* No. 98 Civ. 5463, 1999 WL 435132, at *5 (S.D.N.Y. June 25, 1999). The district courts are split on the issue, although the recent trend favors a conclusion of no preemption. *Compare Bendel v. Westchester County Health Care Corp.,* 112 F.Supp.2d 324 (S.D.N.Y.2000) (ruling against preemption); *Campbell,* 1999 WL 435132, at *5 (same); *Reed v. Town of Branford,* 949 F.Supp. 87 (D.Conn.1996) (same); *Essen v. Board of Educ. of the Ithaca City School District,* No. 92 Civ. 1164, 1996 WL 191948 (N.D.N.Y. April 15, 1996) (same); *Jungels v. State Univ. Coll. of New York,* 922 F.Supp. 779 (W.D.N.Y.1996) (same), *with Gregor v. Derwinski,* 911 F.Supp. 643 (W.D.N.Y.1996) (ruling of preemption); *Reale v. Jenkins,* No. 92 Civ. 7234, 1993 WL 37091 (S.D.N.Y. Feb. 9, 1993) (same); *Tranello v. Frey,* 758 F.Supp. 841 (W.D.N.Y.1991) (same), *aff'd on other grounds,* 962 F.2d 244 (1992).

Those courts that permit a § 1983 claim follow closely the reasoning of *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), where the court found that in the context of sex discrimination "a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII." This Court finds no reason to differentiate between Title VII and ADEA for preemption purposes. *See Reed,* 949 F.Supp. at 89. Here, plaintiff asserts that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by refusing to hire him. Although plaintiff's complaint is vague, he does allege a deprivation of rights under the "Constitution and laws of the United States." (Complt.¶ 1.)

The Federal Rules of Civil Procedure instruct that all pleadings should be construed liberally "to do substantial justice." FED.R.CIV.P. 8(f). Furthermore, defendants were placed on notice of plaintiff's equal protection claim and had the opportunity to file a brief in reply when plaintiff raised the issue in his moving papers. (Pl. Mem.Supp.Mot.Amend. at 3.) ("It is, therefore, respectfully submitted that this age discrimination claim may be brought under Section 1983 ... considering the merits of an age discrimination claim pursuant to Section 1983 I[sic] the context of an equal protection agreement.") Because plaintiff presents a separate, cognizable § 1983 equal protection claim, this Court holds that it is not preempted by the ADEA.

### E. *Section 1983 Claim*

To state a cognizable claim under § 1983, "a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under color of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996), *cert. denied,* 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997). It is undisputed that the defendants acted under color of state law. Plaintiff alleges that defendants discriminated against him on the basis of age in violation of the Equal Protection Amendment. Because age is not a suspect class, the Equal Protection Clause only requires a rational basis for discrimination on the basis of age. *See Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Manzi v. DiCarlo,* 62 F.Supp.2d 780, 795 (E.D.N.Y.1999). Whether or not defendants had a rational basis to discriminate on the basis of age is an issue of fact for the jury. Thus, defendants' motion for summary judgment dismissing plaintiff's § 1983 claim is denied.

### 1. *Individual Liability Under § 1983*

#### a. *Respondeat Superior*

Plaintiff's section 1983 claim against Supervisor Feiner in his individual

capacity must be dismissed for lack of personal involvement. Where damages are sought in a section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: "[T]he general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973)). As Judge Scheindlin recently stated:

> A supervisory official may be personally involved in a section 1983 violation in several ways: (1) the official may have directly participated in the violation; (2) the official, after learning of the violation, may have failed to remedy the wrong; (3) the official may have created a policy or custom under which unconstitutional practices occurred; (4) the official may have been grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official may have exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

*Showers v. Eastmond,* No. 00 Civ. 3725, 2001 WL 527484, at *4 (S.D.N.Y. May 16, 2001).

Here, plaintiff does not allege any facts to establish sufficient personal involvement under any of the theories enumerated above. The uncontroverted evidence limits Supervisor Feiner's involvement to receiving a letter from plaintiff expressing his interest in applying for a position as a police officer and subsequently referring plaintiff to Kapica. (Feiner Aff. ¶¶ 5–6.) Plaintiff does not contest that "Supervisor Feiner was not involved in the decision not to recommend [him] for appointment to the position of police officer with the [GPD]." (Defs.Rule 56.1 Stmt. ¶ 51.) Accordingly, all § 1983

claims against defendant Feiner in his individual capacity are dismissed.

### b. *Qualified Immunity*

Defendants move to dismiss the claim of individual liability against Kapica on the grounds that he is entitled to qualified immunity under § 1983. For the following reasons, we disagree.

As the Second Circuit has recently stated,

> A government official sued in his individual capacity is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.' These three issues should be approached in sequence, for if the second is resolved, the third becomes moot; a favorable resolution of the first moots both the second and the third.

*X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (internal citations and quotations omitted). Here, there is no dispute that age discrimination is contrary to clearly established federal law. Moreover, having already held that a jury may reasonably find that defendants intentionally discriminated against plaintiff (*see supra* Section II.C.), it follows that the same jury may find that Kapica did not act "objectively, legally and reasonably." *X–Men Sec.,* 196 F.3d at 66. Therefore, we cannot decide as matter of law that defendant Kapica is entitled to qualified immunity and we deny defendants' motion for summary judgment on this issue.

### 2. *Municipal Liability Under § 1983*

Defendants argue that plaintiff's § 1983 claim against the Town must be dismissed because plaintiff cannot establish municipal liability. "A municipality may not be held liable in an action under § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior.*" *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Nonetheless, a § 1983 claim may be brought against a municipality where a "policy or custom" of the municipality deprived the plaintiff of his constitutional rights. *See id.* at 690–91. To establish municipal liability, a plaintiff must show that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." *Id.* at 694. Furthermore, "there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

Where no municipal policy exists, "liability may nonetheless arise from 'a course of action tailored to a particular situation' by a municipal decision maker, provided that 'the decision maker possesses final authority to establish municipal policy with respect to the action ordered.'" *Legal Aid Soc'y v. City of New York,* 114 F.Supp.2d 204, 231 (S.D.N.Y.2000) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). As the Second Circuit recently explained:

Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather … were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved. It does not suffice for these purposes that the official has been granted discretion in the performance of his duties. Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.

Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law. The relevant legal materials[ ] include state and local positive law, as well as custom or usage having the force of law. The matter of whether the official is a final policymaker under state law is to be resolved by the trial judge before the case is submitted to the jury.

[Moreover], the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's business. Thus, the court must ask whether the governmental official is a final policymaker for the local government in a particular area, or on the particular issue involved in the action.

*Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.) (internal citations, alterations and quotation marks omitted), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000). Where, as here, the plaintiff does not rely on a formal policy, the burden of showing an official is the final policymaker in a given area rests on the plaintiff. *See Id.* at 57–58.

Plaintiff does not allege, and the record does not permit, a finding that the hiring decision was made pursuant to official policy or custom. Furthermore, plaintiff has failed to meet his burden of establishing that Kapica was "responsible under state law for making policy in that area of the [municipality's] business." *See id.* at 57 (quoting *St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). As Chief of Police, Kapica had authority only to recommend an applicant to the Board. The Board made the actual appointment. (Defs.Rule 56.1 Stmt. ¶ 35.) That Kapica had discretion in deciding whom to recommend does not establish that he was the final government policymaker. Because plaintiff has submitted no evidence for a basis for an official capacity claim against Kapica, that claim is dismissed. However, although Kapica was not the policy maker on this decision, the Board was and its action is properly considered to be that of the Town. Accordingly, the motion to dismiss § 1983 claim against the Town is denied, but because there is no genuine dispute suggesting that defendant Feiner was involved in the decision, the claim against him must be dismissed.

## CONCLUSION

For the reasons stated above, we grant plaintiff's motion for leave to amend the Complaint and add an ADEA claim, but deny leave to amend to add a First Amendment retaliation claim. Moreover, we deny defendants' motion for summary judgment as to plaintiff's ADEA and NYHRL claims. We also deny summary judgement as to the § 1983 claim asserted against defendant John Kapica in his individual capacity and against the Town. However, we grant summary judgment and dismiss the § 1983 claim against defendant Paul J. Feiner in his individual

and official capacities and against defendant Kapica in his official capacity.

SO ORDERED.