Ralph M. PURDY, Plaintiff,

v.

TOWN OF GREENBURGH, Paul J. Feiner, Individually and as Supervisor of the Town of Greenburgh, and John Kapica, Individually and as Chief of Police of the Town of Greenburgh Police Department, Defendants.

No. 00 CIV. 4363(WCC).

United States District Court, S.D. New York.

Feb. 26, 2003.

Law Offices of Thomas P. Halley, Poughkeepsie, NY (Thomas P. Halley. Esq., Of Counsel), for Plaintiff.

Traub Eglin Lieberman Straus, Hawthorne, NY (Mario Castellitto, Esq., Of Counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this action under 42 U.S.C. § 1983 for alleged employment discrimination, in failing to rehire him in 1997, plaintiff Ralph M. Purdy seeks damages for lost wages and pension benefits. Defendants, Town of Greenburgh ("the Town"), Paul J. Feiner, individually and as Supervisor of the Town and John A. Kapica, individually and as Chief of Police of the Town, bring the instant motion for partial summary judgment pursuant to FED. R. CIV. P. 56 on the ground that plaintiff would not have been entitled to additional pension benefits even if he had been rehired.[1] For the reasons that follow, the Court grants defendants' motion.

## BACKGROUND [2]

Plaintiff was born on November 10, 1936. (Purdy Aff. ¶ 18.) On April 25, 1960 he was hired by the Greenburgh Po-

---

**1.** During a pre-motion conference held on October 4, 2002, this Court granted defendants' application for leave to file a motion for summary judgment dismissing all claims of damages in the form of alleged lost pension benefits, to the extent that plaintiff refused to voluntarily withdraw that claim. Plaintiff re-fused to voluntarily withdraw his pension claim.

**2.** The facts and prior proceedings surrounding this action have been fully developed before this Court, familiarity of which are assumed. *See Purdy v. Town of Greenburgh,* 166 F.Supp.2d 850 (S.D.N.Y.2001) *("Purdy I ").*

lice Department ("GPD") and served as a police officer for approximately sixteen years. (Pl. Dep. at 24.) On February 20, 1976, after an evidentiary hearing before the Town Board, plaintiff was terminated for knowingly violating Chapter 9.5.14 of the GPD Rules and Regulations (use of his police office for political purposes). (Defs.Ex. G.) Plaintiff has not been employed as a police officer since 1976. During his employment with the Town, plaintiff was a member of the New York State and Local Retirement System Police and Fire Retirement System ("Pension System"). In 1991, when he reached age 55, plaintiff applied for and received pension benefits from the Pension System based upon his accrued service credit. His application was accepted and plaintiff retired. Plaintiff has been receiving a pension from the Pension System since December 1, 1991, the effective date of his retirement, until the present time. In March 1995, plaintiff sent Greenburgh Town Supervisor Feiner a letter expressing his interest in applying for a position as police officer. (Kapica Aff. ¶ 3.) Feiner referred plaintiff to Police Chief Kapica who has authority to make final recommendations to appoint applicants to the position of police officer. On April 2, 1996, plaintiff submitted a completed application for employment with the GPD which was considered by Kapica. (DeCarlo Aff. ¶ 4, Ex. A.) Although the reasons for the determination are in dispute, Kapica decided that plaintiff was not qualified and that he would not recommend him for appointment as a police officer. Defendants contend that since 1977, plaintiff has been steadily employed by the Police Union at a salary higher than he would have earned if he had been rehired by the GPD and therefore has suffered no loss of income. However, plaintiff also seek damages in the form of lost pension benefits that he claims he would have received had he been rehired by defendants. Defendants maintain that plaintiff cannot prove damages in the form of lost pension benefits under the applicable sections of the New York State Retirement and Social Security Law ("Retirement Law").

## DISCUSSION

### I. *Summary Judgment Standard*

Defendants move for partial summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali*, 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir.1991). Legislative history and statutory interpretation are questions of law appropriately decided on a motion for summary judgment. *Saroyan v. William Saroyan Foundation*, 675 F.Supp. 843 (S.D.N.Y. 1987).

## II. *Applicable Law*

■ The instant action requires us to navigate the unfamiliar territory of the Retirement Law. We begin with plaintiff's argument that, pursuant to § 375–i, he would be entitled to a pension at his own election at any time after completion of 20 years of service as a police officer with the Town. (Pl. Mem. Opp. Summ. J. at 1.) Section 375–i(c) states that, "In the case of persons who last became members on or after July first, nineteen hundred seventy-three, the provisions of this section shall be applicable only to those retiring or separating in vested status prior to July first, nineteen hundred seventy-four." Here, had he been hired, plaintiff would have last become a contributing member of the system at the earliest on June 13, 1997. As defendants point out, it is now impossible for plaintiff to retire or separate in vested status prior to July 1, 1974. (Defs. Mem. Supp. Summ. J. at 6.) Thus, as a matter of law, plaintiff cannot qualify for increased pension benefits under § 375–i.[3]

■ We turn next to defendants' argument that plaintiff cannot qualify for any increased pension benefits as a retired member by combining his prior service credits with any newly earned service credits earned after a return to public service under § 401.[4] Section 401(a) provides:

> If a retired member, receiving a retirement allowance … returns to active public service, … and is eligible for membership in the policemen's and firemen's retirement system, he thereupon shall become a member and his retirement allowance shall cease. In such

---

3. Plaintiff draws our attention to two letters written by Jay Fremont, Director of the New York State and Local Retirement Systems, which suggest to plaintiff's attorney, Thomas P. Halley, that plaintiff is somehow entitled to an allowance under § 375–i. (Letter from Fremont to Halley of 11/19/02 at 1; Letter from Fremont to Halley of 12/12/02 at 1.) However, these letters fail to mention the import of subsection (c) and provide little basis for concluding that § 375–i is applicable. Moreover, where the issue before us is a question of law involving statutory construction, agency interpretation is entitled to less deference. *See New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854 (2d Cir.1992).

Plaintiff also argues that subsection (c) is irrelevant to his case because plaintiff began his membership with the Pension System in 1957. However as defendants point out, under § 340(f)(3), "Membership in the policeman's and fireman's retirement pension system shall cease…[w]hen a member shall retire." Plaintiff retired in 1991, had he been hired in 1997, he would have last become a member after July 1, 1973. Thus plaintiff does not qualify for an increased pension under § 375–i(c).

4. Plaintiff argues that § 401 is inapplicable as it has been abrogated by Article 14 of the Retirement Law. In support of this argument plaintiff cites a New York State Attorney General opinion, dated October 22, 1976, purportedly stating that retirees who return to public service after July 1, 1976, become mandatory members of the appropriate retirement system of a participating employer, pursuant to the provisions of Article 14. (Pl. Mem. Opp. Summ. J. at 2.) However, plaintiff has failed to provide the Court with this opinion and our own research has uncovered no such authority. In any event, we find plaintiff's attempts to avoid the application of § 401 unavailing in light of its clear relevance to plaintiff's employment situation.

Specifically, § 401 provides, "If a retired member, receiving a retirement allowance for other than physical disability, returns to active public service …." Plaintiff was formerly employed by the GPD for approximately 16 years from April 25, 1960 to February 20, 1976. During his employment with the Town, plaintiff was a member of the Pension System. (Defs. Mot. Supp. Summ. J. at 2.) In 1991, plaintiff retired. The issue before the Court is whether, if the Town had rehired plaintiff in 1997, he would be entitled to an increased pension benefit, based upon his new employment. Simply put, plaintiff retired and sought to be rehired, thus § 401 is clearly applicable.

event, he shall contribute to the policemen's and firemen's retirement system as if he were a new member. Upon his subsequent retirement he shall:

1. Be credited with all member service earned by him since he last became a member of the policemen's and firemen's retirement system; and

2. Received (sic) a retirement allowance which shall consist of:

(b) The pension ... which he was receiving immediately prior to his last restoration to membership, plus a pension ... based upon the member service credit earned by him since he last became a member. Such latter provisions shall be computed as if he were a new member when he last became a member.

Thus, pursuant to § 401(a), when a retired member returns to active service, he becomes a member of the Pension System and all retirement benefits he is currently receiving cease by operation of law. (Defs. Mot. Supp. Summ. J. at 4.) The member who returns to active service then begins to accrue service credits toward a second pension as if he were a new member in the Pension System. Upon the member's second retirement from the Pension System, he would be entitled to essentially two pensions: (1) the reinstatement of the pension benefits he was receiving immediately prior to his last restoration to public service; and (2) a second pension based upon the member service credit earned since the restoration to public service. (*Id.*) The second pension is computed as if he were a new member as of the time of restoration to service. As defendants explain, the retired member who returns to service is not entitled to combine the service credits earned by him in successive periods of public service, with one exception. (*Id.*) That exception under § 401(a) provides:

Where such member shall have earned at least two years of member service credit after restoration to active service, the total service credit to which he was entitled at the time of his earlier retirement may, at his option, again be credited to him and upon his retirement he shall be credited in addition with all member service earned by him subsequent to his last restoration to membership . . . .

Again defendants are correct on the law in their contention that a retired member may combine his prior service credits with the newly earned service credits earned after a return to public service only where the member has earned at least two years of active service credit after his return to active service. (*Id.* at 5.) However, the prior and new service credits can only be combined "upon [the member's] subsequent retirement." Thus, two additional years of service credit must be earned prior to retirement in order to qualify for the combination option. However, plaintiff cannot earn the requisite two additional years of service credit for the same reason plaintiff cannot qualify for a pension under § 384–d.

Plaintiff could have begun earning new service credits at the earliest on June 13, 1997, the statute of limitations bar date. When he reached the mandatory retirement age of 62 on November 10, 1998, plaintiff would have earned one year and five months of service credit from the time of his return to service. (*Id.* at 5.) To qualify for a pension under § 384–d, plaintiff must have completed 20 years of service by age 62, or must retire by age 62 with less than 20 years of service. Section 384–d(e)(1), (2). In either case he must retire and separate from service within one month after reaching age 62 to qualify for a pension under this section. *See* § 384–d(i). Since plaintiff would only have earned 1.5 years of new credited service upon reaching age 62, the 20–year option is not available to him. Similarly, plaintiff cannot retire at 62 with less than 20 years

of service because the vesting period under § 76 is five years and plaintiff would have only completed 1.5 years of service at that time. (Defs. Mem. Supp. Summ. J. at 5.) Returning to § 401, plaintiff cannot avail himself of the option to combine his prior service credits with the new service credits earned after a return to employment because his 1.5 years of service falls short of the two-year minimum service requirement before retirement outlined in § 401.

Finally, we address the December 12, 2002 letter from Fremont to Halley, in which Fremont suggests that despite plaintiff's failure to qualify for an increased or second pension under the Retirement Law, a court order could direct the Retirement System to credit plaintiff with the requisite service to enable plaintiff to receive such pension. (Letter from Fremont to Halley of 12/12/02 at 1.) The Court finds no reason to impose such a burden on the pension fund in contravention of the clearly delineated statutory scheme.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted. We therefore dismiss all claims of damages for lost pension benefits.

SO ORDERED.